Ware *v.* State.

---

WARE  *v.*  STATE.

*(Nashville.*    March  22,  1902.)

1. NEW TRIAL.  *Affidavits for, insufficient, when.*

Affidavits for new trial are properly disregarded by the court
where the matters therein contained appear to be fabrica-
tions or unworthy of credence, or were known to the com-
plaining party, or should have been in time to have put them
in evidence on the trial.  *(Post, pp. 468, 469.)*

2. REASONABLE DOUBT.  *Court's charge not erroneous as to:*

It is not reversible error for the court to instruct the jury, in a
murder case, that "reasonable doubt" is inability, after an in-
vestigation of the whole proof "to let the mind rest easily
upon the certainty of guilt *or innocence,*" where in other and
subsequent portions of the charge, it is made plain that the
jury must acquit if they have a reasonable doubt as to the de-
fendant's *guilt.  (Post, pp, 469-474).*

Case cited: State *v.* Moss, 106 Tenn., 359.

---

FROM   DAVIDSON.

---

Appeal in error from Criminal Court of David-
son County.    W.  M.  HART,  J.

MELVIN  YOUNG,  LEROY  MCGREGOR  and  W  H.
COOPER  for  Ware.

Attorney-General  PICKLE  and  M.  P.  ESTES  for
State.

BEARD, J. While it was orally stated at the bar, and is reaffirmed in the petition before us, that the present is the first application for a rehearing in this case, the fact remains that it is the second—the first asking for a rehearing only on one point, while this asks for re-examination of the whole record.

This is done, as is stated in the petition, under the constraint of a high sense of duty, imposed by the oath of office, which the counsel for petitioner have taken, and because, as is averred by counsel, they think they "are correct as to the facts," and they *"know* they are correct as to the law." The Court is not lacking in a due regard for the professional zeal which prompts this second application, and but for the pressure of other and important matters, would cheerfully gratify counsel by a thorough reinvestigation of the entire record. But circumstanced as the Court is, counsel can well understand that its whole time, nor the greater part of it, cannot be devoted to any one case. Out of deference, however, to the importunity of the present petition, we have devoted such time to a re-examination of the case as could be spared, and as its importance required, and will now announce the result reached by us.

1. We entertained no doubt, as stated in our original disposition of this case, that the jury were abundantly warranted in finding a verdict

of murder in the second degree against the plaintiff in error, and further investigation has not served to *weaken* this conviction. It would be a waste of time to restate the facts disclosed in the record.

2. The affidavits filed on the motion for a new trial were not overlooked, but as this motion, so far as it was based in these affidavits, was so lacking in merit, it was assumed that the counsel were not serious in their suggestion or assignment that the trial Judge was in error in disregarding these affidavits. One of these is the affidavit of a boy twelve years of age at the time of his examination, and less at the time of the homicide, who undertook to give a detailed statement of the conversation of the parties, as well as of their acts, which, upon its face, bore unmistakable marks of fabrication. In addition, no sufficient reason is given why plaintiff in error did not avail himself of this party's knowledge on the trial. It is true, Ware says, in his affidavit, that he did not know what he could prove by him until after the trial, but if what this boy says is true, he might easily have known it. The boy's affidavit places him some 481 feet away from the scene of the difficulty, but near enough, according to his statement, to see what was done and to hear distinctly what was said. Green Ware knew of his being there, because he states that in passing away from the

place where the deceased was stabbed, he ad-
dressed a remark to the affiant. This being so,
it was inexcusable negligence upon the part of
plaintiff in error not to have ascertained before
the trial what this boy would testify to.

As to the affidavits of the two negro women,
used in the motion for new trial: They were
witnesses for the plaintiff in error, and there
was no good reason assigned why they were not
examined as to the matters set out in these affi-
davits. In addition, upon the disclosures made in
the record, as to these women and other associates
of Ware, the trial Judge was entirely right in
declining to give credence to their statements.

3. We now approach the third proposition sub-
mitted, embracing, as it does, what the counsel
say they "know to be the law of the case," a
principle which, as asserted by them, is "as old
as the hills," and which, they assert, "should be
permitted to stand for all time—more eternal than
the hills." That principle, they insist, has been
disregarded by the Court in its disposition of this
case, and, being so disregarded, is likely to be
the beginning of unnumbered ills.

They eloquently observe in their petition that
just "as a thousand Rolands spring up from the
example of one; just as a thousand Kossuths are
born through the parentage of one; just as a
thousand Garibaldis live where before there was
one; just as a thousand patriots *learn hatred* of

tyranny where Emmett died, just in the same way will a thousand evils spring up and grow from the example of one." Continuing, with earnestness and poetic elegance of expression, they say: "A stroke at the corner stone of the law may invite a thousand other strokes, and sooner or later we may find the capstone, as well as the corner stone, gone, and our constitutional rights swept away from us."

Before coming to the question, it is proper to observe that we are satisfied the counsel will acquit this Court of a design to announce an opinion which is to become a breeding place of woes without number, or to strike down the "capstone," or dislodge the "corner stone" of our constitutional liberties. This, if done, is without purpose . or deliberateness on our part. But has this Court or the Court below been guilty of an error which constitutes a menace to civil liberty?

That which the petitioner claims to be as "immemorial as time," and which, it is insisted, the trial Judge violated, is the legal definition of "reasonable doubt," in criminal cases, and it is in the failure on the part of this Court fully to rebuke this violation, lies, according to the averment of the petition, the nest of ills, which not only affect the plaintiff in error, but threaten destruction to social order and our political system. In defining reasonable doubt, the Court said that by these terms "is meant not that which, of

possibility, may arise, but it is that doubt, engendered by an investigation of the whole proof, and our inability, after such investigation to let the mind rest easily upon the certainty of guilt, or innocence."

The fault in this definition is in the addition of the words, "or innocence." This inaccuracy was pointed out and condemned in the case of *State* v. *Moss,* 106 Tenn., 359. But in disposing of this present case, the Court said, that whatever of vice there may have been in the definition growing out of the addition of these two words, was removed or neutralized by a sentence immediately following the definition, and in subsequent clauses of the charge. The sentence referred to as following the definition and constituting with it one paragraph is as follows: "Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required. And this certainty is required as to every proposition of proof requisite to constitute the offense, and as to every grade of crime charged or included in the indictment."

It will be seen that the trial Judge is simply elaborating the proposition involved in the definition just given, and in doing so, said to the jury, by implication, that moral certainty of the defendant's guilt was essential to conviction.

Again, when he comes to direct the jury as

to their verdict, he says: "When you come to consider of your verdict, you will first inquire 'is the defendant guilty of murder in the first degree?' You will bear in mind that each and all of the ingredients which . . . go to make up the crime of murder in the first degree . . . are essential to constitute this grade of homicide, and must be established beyond a reasonable doubt before you can convict the defendant of this crime."

Proceeding, he says: "If you find him not guilty of murder in the first degree, or have a reasonable doubt of his guilt as to the crime, you will proceed to inquire whether or not he is guilty of murder in the second degree. . . . If you should be satisfied beyond a reasonable doubt, from all the proof, that he is guilty of murder in the second degree, you will assess the period of his confinement in the penitentiary, etc. But if you should find him not guilty of murder in the second degree, or if you have a reasonable doubt as to his guilt of that offense, you will acquit him of that crime, and proceed to inquire whether or not he is guilty of voluntary manslaughter. . . . If you should find him not guilty of voluntary manslaughter, or if you have a reasonable doubt of his guilt of that offense, you will proceed to inquire if he is guilty of involuntary manslaughter. . . . If you should find from the proof that he is

guilty of involuntary manslaughter      .      .      .
beyond a reasonable doubt, it will be your duty
to convict him of that offense," etc.

The trial Judge returns later in his charge to
a consideration of the various grades of crime
from murder in the second degree to that of as-
sault and battery, and ends each, once more, with
the instruction that if they should find him not
guilty of the particular offense, or should enter-
tain a reasonable doubt of his guilt, then they
should acquit him of that offense. He concludes
this branch of his charge thus: "If upon all
the proof, you have a reasonable doubt of the
prisoner's guilt of any of the offenses defined and
explained to you, it is your duty to acquit the
defendant, and your verdict will be not guilty."

In all this long charge, the trial Judge warns
the jury that they cannot convict the prisoner of
any of the offenses embraced in the indictment,
unless satisfied from the whole body of the proof
that he is guilty beyond a reasonable doubt. In
this view we think it impossible to conceive that
the jury were misled to the hurt of the plaintiff
in error, by the use of the two words, "or inno-
cence," in the Court's definition of reasonable
doubt.

These were the views orally announced in dis-
missing the first petition for rehearing—they are
adhered to, and are now reduced to writing, lest

the counsel for petitioner may again misapprehend them.

The petition is therefore dismissed and the plaintiff in error, without further delay, will be turned over to the Warden of the penitentiary.